### COMMONWEALTH *versus* WILLIAM SLACK *et al.*

The removal of a dead body is not an offence within the meaning of *St.* 1830, *c.* 57, [Revised Stat. *c.* 130, § 19,] unless done with the intent to use or dispose of the body for the purpose of dissection ; wherefore, in an indictment on that statute, such an intent must be averred.

AT the Court of Common Pleas holden for Hampshire in November 1836, William Slack and Joseph Kingsley were convicted on an indictment alleging that they, at Westhampton, on the 20th of January, 1836, " did unlawfully, feloniously, knowingly and wilfully remove and convey away from the said town of Westhampton a certain human body, to wit, the body of Ibrook Miller, who had deceased at said Westhampton previous to the said removing and conveying away aforesaid, they, the said William Slack and Joseph Kingsley, not being authorized by the board of health or overseers of the poor or the selectmen of said town of Westhampton," contrary to the form of the statute, &c.

It appeared that Miller died at Kingsley's house in Westhampton, and that Slack, with the aid of Kingsley, secretly conveyed the dead body from Kingsley's house to another town and delivered it to a physician for the purpose of dissec-

tion. The counsel for the defendants contended, that the statute on which the indictment was found, (*St.* 1830, *c.* 57, § 1, 2,) entitled " an act more effectually to protect the sepulchres of the dead, and to legalize the study of anatomy in certain cases," applied to the removal of dead bodies which had been previously dug up, and not to the removal of such as had never been buried ; but *Strong* J. instructed the jury, that it applied to a case like the one under consideration.

To this decision the defendants excepted.

The case having been brought up to this Court upon the exceptions, the defendants also moved in arrest of judgment, because the indictment does not allege that the dead body was removed for the purpose of dissection.

*Forbes* and *Huntington*, for the defendants, cited in support of the motion in arrest, 2 Hawk. P. C. *c.* 25, § 60 ; *Rex* v. *Horne*, Cowp. 672 ; *Bloss* v. *Tobey*, 2 Pick. 328 ; *St.* 1830, *c.* 57, § 3 ; *St.* 1834, *c.* 187, § 3.

*Austin*, (Attorney-General,) and *Wells*, (District-Attorney,) for the Commonwealth.

WILDE J. delivered the opinion of the Court. At the trial of this indictment in the Court of Common Pleas the defendants were convicted, and the case comes before us on a motion for a new trial for the supposed misdirection of the court, and on a motion in arrest of judgment. Both motions depend on the construction to be given to the statute.; and the opinion we have formed in considering the latter motion renders the former immaterial. For being of opinion that the indictment is defective, and that no judgment can be rendered on it against the defendants, we ought not to grant a new trial, although the instructions to the jury should be considered incorrect.

It appears by the evidence reported, that the dead body was removed by the defendants before the same had been interred, and their counsel contended at the trial, that such a removal is no offence within the true meaning of the statute. On the other hand, the Attorney-General contends that the object of the statute was to protect dead bodies from violation, for purposes of dissection, as well before as after their inhumation ; so that they are within the protection of the law from the moment they be-

*Sept. 28th.*

*Sept. 30th.*

come the proper subjects of a sepulchre.   The words of the statute describing the offence are, "That if any person, not being authorized by the board of health, &c. shall knowingly or wilfully dig up, remove, or convey away, or aid and assist in digging up, removing or conveying away, any human body, or the remains thereof," such person or persons so offending shall, on conviction, be adjudged guilty of felony.   The literal construction of this clause of the statute would seem to prohibit the removal of any dead body for any purpose whatever, but such a construction would render a person criminal for removing a dead body for the purpose of interment, without obtaining license therefor from the overseers of the poor or selectmen ; which it is impossible to suppose could have been the intention of the legislature.   Such a construction cannot be adopted, unless the meaning of the legislature, and the convenience of the community, are, in the construction of a statute, to be wholly disregarded.   The prohibition, therefore, must be understood with some limits, and what those limits are, appears with sufficient certainty by the third section, which explains the principal object of the statute.   This was, to allow dead bodies to be used, with the permission of the selectmen, or overseers of the poor, of the several towns in the Commonwealth, for the advancement of anatomical science, and for the instruction of medical students, in certain cases, and to prevent the use of them for such purpose in all other cases.   This was the great object of the statute ; the evil intended to be guarded against was the removal of dead bodies for the purpose of dissection and anatomical examination and instruction.   The removal for any other purpose was not, as we apprehend, within the contemplation of the legislature, and consequently was not intended to be prohibited by the first section of the statute.

When the object of a statute is to prevent a particular mischief, the remedy should be commensurate with the mischief intended to be prevented or restrained.   To construe general words so as to extend the remedy beyond the mischief, would not be a sound construction of a statute.   We are, therefore, of opinion, that the removal of a dead body is not an offence within the true meaning of the statute, unless it is removed with the intent to use it or dispose of it for the purpose of

dissection. And this the Attorney-General, in his argument, admits to be the true construction of the statute. This being the meaning of the prohibitory clause, the indictment ought to have averred that the defendants removed the dead body with the intention to use it or dispose of it for the purpose of dissection. The criminal nature of an offence is a conclusion of law from the facts and circumstances of the case. The indictment, therefore, should set out precisely all the facts and circumstances which render the defendant guilty of the offence charged. 1 Stark. on Crim. Pl. 89 ; 2 Hale, 169. This is required to enable the defendant to prepare for his defence, and to enable the court, looking at the record after conviction, to decide whether the facts charged are sufficient to support a conviction of the crime, and to warrant their judgment. " The charge," as Chief Justice *De Grey* remarks in *Rex v. Horne,* " must contain such a description of the crime, that the defendant may know what crime it is which he is called upon to answer ; that the jury may appear to be warranted in their conclusion of ' guilty' or ' not guilty' upon the premises delivered to them ; and that the court may see such a definite crime, that they may apply the punishment which the law prescribes." Cowp. 682. If the intent with which an act is done constitutes the offence charged, that intent must be averred in the indictment. In *Penhallo's case,* Cro. Eliz. 231, the defendant was indicted on the *5th Edw.* 6, *c.* 4, for drawing his dagger in a church against J. S. and doth not say to the intent to strike him. The indictment was adjudged bad. So if an offence at common law is by statute punishable with additional severity, when committed with the intention to perpetrate another and greater offence, the criminal intention must be directly averred in the indictment, or the offender cannot be subjected to the additional punishment. It is not sufficient that the indictment concludes *contra formam statuti.* So if a misdemeanor is declared to be felony when committed with a certain criminal intent, it is not sufficient to aver in the indictment that the criminal act was done feloniously.

We are of opinion, therefore, that as there is no averment in this indictment, that the defendants removed the dead body with the intent to use or dispose of it for the purpose of dis-

Common-
wealth
v.
Slack.

section, and as we consider such intent as the essence of the crime, the indictment is defective, and that judgment must be arrested.

*Judgment arrested.*